961 F.2d 220
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Hayward Curtis LAWSON, Petitioner-Appellant,
v.
Tom COOPER, Warden, Territorial Correctional Facility,
Respondent-Appellee.
 No. 91-1245.
 United States Court of Appeals, Tenth Circuit.
 April 17, 1992.
 
 Before SEYMOUR, STEPHEN H. ANDERSON and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 SEYMOUR, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 In 1974, Haywood Lawson was convicted by a jury of the murder of Larry McVay. The evidence against him at trial consisted primarily of the eyewitness testimony of the victim's wife, Charlotte McVay, and the testimony of Ronald Rutherford regarding Mr. Lawson's possible motive for committing the crime. Mr. Lawson now contends in this habeas corpus action that he was denied the effective assistance of counsel by his attorney's failure to introduce potentially exculpatory evidence or to have it independently analyzed. We affirm the district court's denial of habeas corpus.
 
 
 3
 Charlotte McVay testified, in sum, that she was sitting in her bedroom, and her husband was in the living room with his friend Jeff Van Cura, when she heard a knock at the front door. She then heard a shot and walked to the living room, where she saw her husband lying on the floor, his friend still on the couch, and two men wearing "Russian-style" fur hats and holding guns. One of the men, whom she later identified as Lawson, ordered her back to the bedroom and asked for the receipts from her husband's business. After taking a jar of pennies, ten dollars, and several credit cards, the two men left. Mrs. McVay and Mr. Van Cura called for help.
 
 
 4
 Mr. Rutherford testified in exchange for dismissal of burglary charges against him that he overheard a conversation between Mr. Lawson and another man in which Lawson was told that the manager of Rocky Mountain Auto Supply brought the business's receipts home each night. Rutherford further testified that he went to the library with Lawson to find the name of Rocky Mountain's manager, who turned out to be McVay. Finally, he added that several months after the murder, Lawson suggested that Rutherford get rid of a Russian-style fur hat since the suspects in the McVay case reportedly had similar hats.
 
 
 5
 Attorney Michael Bender cross-examined the witnesses at trial, emphasizing Mr. Rutherford's psychotic and criminal history and Mrs. McVay's inability immediately after the crime to describe the perpetrators in any detail. He did not, however, call any witness or offer any evidence relating to an FBI analysis of hairs taken from one of the two Russian-style hats found a short distance from the McVay home on the night of the murder. Mr. Lawson argues that Mr. Bender's failure to use this evidence to bolster a mistaken identity defense constituted ineffective assistance.
 
 
 6
 The Supreme Court articulated a two-prong test for ineffective assistance in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner must first demonstrate that the attorney's conduct at trial fell outside the bounds of "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. In addition, the attorney's ineffectiveness must have prejudiced the defendant's opportunity to obtain a fair trial. Id. at 687.
 
 
 7
 Before trial, Mr. Bender received a copy of an FBI analysis of the hair sample taken from the fur hat. The "result of examination" reads in full: "The brown head hairs previously recovered from the Q4 hat exhibit differences to the hairs in specimens K1 through K3 and could not be associated with Lawson, Wiggins or Rutherford." Appellant's Opening Brief on Appeal at App.B. Mr. Bender, based on a phone conversation with an FBI agent, understood the report to mean that the test was inconclusive. He attempted unsuccessfully to introduce the report without the testimony of the agent, but was unwilling to call the agent to the stand for fear that the live testimony would damage defendant's case. He also declined to have an independent expert analyze the hairs. The agent has since testified in collateral proceedings that the report conclusively indicated that the hair taken from the hat did not belong to any of the three named men.
 
 
 8
 Without taking a position as to the level of competence displayed by Mr. Bender in his decision not to introduce the evidence, we hold that this decision did not unduly prejudice Mr. Lawson's defense and therefore did not rise to the level of ineffective assistance of counsel. See Strickland, 466 U.S. at 697 (unnecessary to address both prongs of test where one is dispositive). Under Strickland,
 
 
 9
 [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 
 
 10
 Id. at 694. In order to convict Lawson, the jury must have credited Mrs. McVay's account of the crime as well as her identification of Lawson at the lineup fifteen months later. It seems likely in addition that they gave some weight to Rutherford's testimony, despite Mr. Bender's impeachment of his credibility. They may also have relied on the fact that while Mr. Van Cura could not identify Lawson, he did identify Jackson Wiggins as the second perpetrator; and undisputed testimony revealed that Mr. Wiggins and Mr. Lawson were seen together on the date of the murder, both before and after its occurrence. In light of this evidence, we do not think the evidence of the hair found in one of the hats would have been significant had it been introduced. The hats in question were found near, but not in, the McVay home, and they were not taken directly from the suspects. Mrs. McVay was not asked to identify the hats at trial, and indeed, there was little testimony about the hats at all. Even with the FBI analysis, the jury might well have concluded that someone else wore the hat before or after defendant, that defendant wore the hat from which no hairs were recovered, or that the hat from which the hair was recovered was not the same one worn by the killer. Given these circumstances, we agree with the district court that Mr. Lawson was not prejudiced by his attorney's conduct.
 
 
 11
 Accordingly, the judgment of the district court is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3